IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Arnold Gilliam, | ) | C/A NO.  3:13-1575-CMC |
| | ) | |
| Plaintiff, | ) | |
| | ) | **OPINION and ORDER** |
| v. | ) | |
| | ) | |
| Valmont-Columbia Galvanizing, Inc., | ) | |
| | ) | |
| Defendant/Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Arnold's Transports, | ) | |
| | ) | |
| Third-Party Defendant. | ) | |
| | ) | |

This matter is before the court on Plaintiff's motion to strike the deposition errata sheet of Defendant's expert witness, Deponent Edward W. Emerick (Emerick). ECF No. 95.  Defendant has responded in opposition to Plaintiff's motion, and Plaintiff has replied.  Defendant also has filed a supplemental response to Plaintiff's motion which includes a copy of the errata sheet and the deposition pages in question.

### BACKGROUND

On June 10, 2013, this matter was removed to this court from the Court of Common Pleas for Darlington County, South Carolina, pursuant to the provisions of 28 U.S.C. § 1332 and 28 U.S.C. § 1441.  ECF No. 1.  Plaintiff Arnold Gilliam ("Plaintiff") filed this negligence action against Defendant Frazier Industrial Company ("Frazier") seeking damages for injuries suffered on June 13, 2012.  The complaint contended Plaintiff was injured in the process of transporting a load of

1

galvanized steel frames to Frazier's facility.  On July 2, 2013, Plaintiff amended the complaint, adding Defendant Valmont. ECF No. 9.  According to the amended complaint, Plaintiff was injured after picking up the load of materials from Valmont's facility and transporting the load to Frazier's facility.  The amended complaint alleges that upon reaching the designated unloading point at Frazier's facility, an agent of Frazier bumped or caused vibrations which caused the load to fall, striking Plaintiff and causing injuries. ECF No. 9 at 2.  Plaintiff seeks actual and punitive damages.

On April 9, 2014, Valmont filed its answer to the amended complaint and asserted a third-party complaint against Arnold's Transports for contribution and indemnification.  ECF No. 43.  Frazier also asserted a third-party complaint against Arnold's Transports in conjunction with its answer to the amended complaint.  ECF No. 45.  On May 12, 2014, the parties filed a stipulation of dismissal as to Plaintiff's claims against Frazier as well as Frazier's claims against Third-Party Defendant Arnold's Transports.  ECF No.  54.

On April 28, 2015, almost two years after this matter was removed to this court, Plaintiff moved to transfer this case to the Columbia Division of this court. ECF No. 88.  Defendant opposed the transfer; Third-Party Defendant Arnold's Transports consented to the transfer.[1]  On June 23, 2015, this matter was transferred to the Columbia Division of this court and assigned to the undersigned.

On June 23, 2015, Plaintiff filed the current motion, seeking to strike the deposition errata sheet of Emerick.

**STANDARD**

---

[1]Even though Frazier dismissed its third-party complaint against Arnold's Transport, Valmont still has a pending third-party complaint.

2

Rule 30(e)(1) provides that:

On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

Fed.R.Civ.P. 30(e)(1). One purpose of Rule 30(e) is to "permit . . . transcription corrections," such as when the reporter recorded the answer: "yes" but the deponent actually said "no." While a substantive change, these type of changes are permitted by the plain text of the rule. However, courts are divided respecting the leeway to be given to deponents under Rule 30(e) to alter the substance of prior testimony. There is no controlling authority on point in the Fourth Circuit. There are two basic approaches reflected in the decisional law.

One line of authority interprets Rule 30(e) to allow the deponent to make any changes as long as the changes strictly conform to the procedural requirements of the Rule. Under this approach, if the procedural requirements of the Rule are met, any substantive change will be deemed permissible, even those that create inconsistencies or that directly contradict prior testimony. Under this line of cases, changes are not limited to transcription errors. However, both versions of the testimony remain in evidence, and many courts also order that the deposition be reopened to allow further examination about the altered testimony. *See Podell v. Citicorp Diners Club*, 112 F.3d 98, 103 (2d Cir. 1997). *See also Foutz v. Town of Vinton, Virginia*, 211 F.R.D. 293, 295 (W.D. Va. 2002) (requiring amending party to "admit into evidence both the original and correction answers" and to reopen the deposition).

3

The other line of authority interprets Rule 30(e) strictly, allowing only the correction of demonstrated errors made by the court reporter, whether in form or in substance. See *E.I. Dupont de Nemours & Co. v. Kolon Indus., Inc.*, 277 F.R.D. 286, 298 (E.D. Va. 2011); *Garcia v. Pueblo Country Club*, 299 F.3d 1233, 1242 (10th Cir. 2002); *Greenway v. Int'l Paper Co.*, 144 F.R.D. 322, 325 (W.D. La. 1992). This line of cases takes the general approach that:

> The Rule cannot be interpreted to allow one to alter what was said under oath. If that were the case, one could merely answer the questions with no thought at all then return home and plan artful responses. Depositions differ from interrogatories in that regard. A deposition is not a take home examination.

*Greenway*, 144 F.R.D. at 325. Several district courts in the Fourth Circuit take the position that transcriptional or typographical errors are the only types of corrections permitted under Rule 30(e). *See*, *e.g.*, *Kolon Indus.*, 277 F.R.D. 286; *Wyeth v. Lupin Ltd.*, 252 F.R.D. 295, 296-97 (D. Md. 2008); *see also Lee v. Zom Clarendon, L.P.*, 689 F. Supp. 2d 814, 819 (E.D. Va. 2010). This line of authority forecloses substantive changes in what was said at a deposition unless it is shown to be necessary to correct a court reporter's error in reporting what was said. "The purpose of an errata sheet is to correct alleged inaccuracies in what the deponent said at his deposition, not to modify what he wishes that he had said." *Touchcom, Inc. v. Bereskin & Parr*, 790 F. Supp. 2d 435, 465 (E.D. Va. 2011) (quotation omitted).

As noted in *Kolon Industries*,

> The purpose of a deposition is to memorialize testimony or to obtain information that can be used at trial or that eliminates the pursuit of issues or that inform decisions as to the future course of the litigation. One of the main purposes of the discovery rules, and the deposition rules in particular, is to elicit the facts before the trial and to memorialize witness testimony before the recollection of events fade or "it has been altered by ... helpful suggestions of lawyers." *Hall v. Clifton Precision*, 150 F.R.D. 525, 528 (E.D.Pa.1993).

4

277 F.R.D. at 297.

## DISCUSSION

During his deposition, Defendant's expert witness, Edward W. Emerick, testified as follows:

Q: *Okay. Do you fault Frazier Industrial at all in this case?*

A: *No.*

Deposition of Edward W. Emerick 59:4-6. Within the time period provided in the Rule, Deponent

submitted an errata sheet noting the following change to his testimony and an explanation:

*Page No. 59, Line No. 6, Change to: Change no to yes and include text below.*

*The Answer of "No" contained in line 6 is misleading based on my further testimony and case evidence. When asked if I would find fault with Frazier, I will amend that answer with yes. As I stated in my testimony on Page 60 starting at line 9, Frazier could have prevented this with some common safety practices including requiring Mr. Gilliam to stay away from the area until the unloading was completed. Also Mr. Dorrity supports this in his report with Opinion 3.*

*If Mr. Gilliam is to be believed, he testified that the Frazier-employed forklift driver, Mr. Brockington, instructed him to unstrap this load prior to moving the vehicle to its final unloading area. These instructions placed Mr. Gilliam at risk as a load should never be unsecured prior to any movement of a motor vehicle.*

*Finally, if the Frazier-employed forklift driver, Mr. Brockington, noted the load was leaning prior to the unloading process, he should have warned Mr. Gilliam of this danger. If Mr. Brockington is to be believed, he states in his deposition note on page 164 that he saw the load leaning but did not indicate that he warned Mr. Gilliam of the pending danger or took steps to remove Mr. Gilliam from the area and the impending danger.*

Deposition Errata Sheet, Edward W. Emerick, ECF No. 100-5 at 2.

The testimony in question from pages 59 and 60 of Emerick's deposition is as follows:

Q: *Okay. Do you fault Frazier Industrial at all in this case?*

A: *No.*

Q:  *Do you know what their role was in this case? . . .*

A:  *Frazier was the manufacturer of the structured steel.  I believe they sent it to Valmont for coating and Valmont shipped it back to Frazier.*

Q:  *And Frazier was the facility that the incident-where the incident took place, correct?*

A:  *Correct*

Q:  *Could Frazier have done anything- In your opinion, could Frazier have done anything to prevent this incident from occurring?*

A:  *If you go strictly by the deposition of Mr. Gilliam, the only thing that I would point out would be that – the alleged instructions by the forklift driver asking Mr. Gilliam to unstrap.  There should be no reason for a receiver to give a driver instructions on how to secure and unsecure his load.*

Q:  *If indeed they had given Mr. Gilliam that instruction, that Frazier employee, could Frazier or any of its employees have done anything from--from that moment until when the incident occurred to prevent this incident from happening, either having someone there as a lookout or having someone there to make sure some sort of safety precautions were in place?*

A:  *In a perfect world, they could have, yes. They-they could have required the driver to--to stay away from the unloading area until the unloading was completed.  We run into that a lot in the industry.*

*You do run into times-and I've seen this where the forklift operator will--will help, you know, the driver unstrap and use tools available, the forklift or whatever, to make sure the product stays where it's supposed to as they unstrap.*

*There's-there's, in theory, a number of things that could have been--could have been done to protect Mr. Gilliam. I think.*

Q:  *And none of that-none of-none of those things were done by any Frazier employee in this instance where--*

A:  *Not that I'm aware of.*

Attachment to Supplemental Resp. at 1, ECF No. 107-1.  The question after this answer states:

"Okay.  If they were, could they have prevented this incident from occurring?"  *Id.*  Emerick's

response begins (presumably) on page 61 of the deposition, which has not been provided to the court for review.

Plaintiff seeks the application of a narrow reading of Rule 30(e)(1), arguing that the errata sheet is an attempt to "rewrite" Emerick's deposition testimony. Mem. in Supp. at 3, ECF No. 95-1. Defendant contends that the court should adopt a broader view of the Rule, arguing that Emerick's answer of "no" on page 59 of his deposition is "misleading based on his subsequent deposition testimony and the case evidence. Resp. at 2, ECF No. 100.

The court assumes for purposes of this matter that a broader reading of the Rule is appropriate, as it "furthers the purpose of the discovery process-to allow the parties to elicit the true facts of a case before trial." *Reilly v. TXU Corp.*, 230 F.R.D. 486, 490 (N.D. Tex. 2005). The court finds that both the original testimony and the errata sheet shall remain in the record, thus subjecting both the testimony and errata sheet to evaluation either at summary judgment or at trial with respect to the contradictory testimony.

To the extent that Plaintiff seeks to reopen Emerick's deposition, this request is denied. Pursuant to the Fourth Consent Scheduling Order, discovery in this matter closed on May 30, 2015. The errata sheet was provided to Plaintiff's counsel on May 21, 2015, and the motion to strike was not filed until June 23, 2015. Due to the age of this matter, the impending dispositive motions filing deadline (July 29, 2015), and the fact that the original testimony and the errata sheet are both in the record of this matter, the court finds that reopening the deposition is not warranted.

Plaintiff's motion to strike the errata sheet is **denied**.

**IT IS SO ORDERED.**

s/ Cameron McGowan Currie
CAMERON McGOWAN CURRIE
SENIOR UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
July 20, 2015

8